# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-2543
_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Raphael L. Donnell,                          *
                                             *
            Appellant.                       *


_____                          Appeals from the United States
                                     District Court for the
No. 08-3102                          Western District of Missouri.
_____


United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Dempsey Johnson,                             *
                                             *
            Appellant.                       *

_____

No. 08-3539

_____

United States of America,                    *
                                              *
              Appellee,                       *
                                              *
       v.                                     *
                                              *
Boun Rattanavong,                             *
                                              *
              Appellant.                      *


_____

No. 09-1580

_____


United States of America,                    *
                                              *
              Appellee,                       *
                                              *
       v.                                     *
                                              *
Dung A. Nguyen, also known as                 *
Johnny Tran, also known as                    *
Johnny Boy, also known as                     *
Johnny Playboy,                               *
                                              *
              Appellant.                      *

-2-

_____

Submitted:  November 17, 2009
Filed:  March 4, 2010
_____

Before MELLOY, BEAM and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

This case arises out of an investigation into the distribution of methylenedioxymethamphetamine (ecstasy) and other illegal drugs in Kansas City, Missouri.  A fourth superseding indictment charged twenty-eight defendants with conspiracy to distribute and distribution of ecstasy and other drugs.  Twenty-three of the defendants pled guilty.  Four defendants, Raphael Donnell, Dempsey Johnson, Dung Nguyen and Boun Rattanavong, went to trial on the conspiracy to distribute count, the sole charge against them.[1]  A jury found each guilty of conspiracy, and the defendants now appeal. Each alleges different errors in the district court's[2] trial and post-trial rulings.  Their appeals were consolidated, and for the following reasons, we affirm.

## I.  BACKGROUND

The investigation leading to this case began with a series of small, street-level purchases of ecstasy and crack cocaine by an undercover Kansas City police detective, Mark Corbin.  Over the course of the investigation, law enforcement officers worked their way up the supply chain, identifying new individuals in the distribution

---

[1]The twenty-eighth defendant was a fugitive at the time of trial.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

-3-

conspiracy. Eventually, all twenty-eight individuals identified in the indictment were charged as members of a single conspiracy to distribute ecstasy, crack cocaine, phencyclidine (PCP) and cocaine. The indictment also included distribution charges against several defendants, along with a criminal forfeiture count against all defendants.

Derrick Seals headed the Kansas City drug operation. Street-level dealers obtained ecstasy and other drugs from Seals's "inner circle" of co-conspirators. Dempsey Johnson bought and sold ecstasy with members of Seals's inner circle and distributed it to street-level dealers. The Government identified Raphael Donnell as a low-level ecstasy dealer for Seals and as an enforcer in Seals's organization. Seals's supplier for the ecstasy he distributed in Kansas City was Vu Nguyen Huynh ("Vu"), who pled guilty and testified for the Government at trial. Vu identified Dung Nguyen and Boun Rattanavong, along with two others, as the suppliers of the ecstasy pills he sold to Seals and others. Thus, the supply chain led from Nguyen and Rattanavong, through Vu, to Seals, and then on to Seals's inner circle and street-level dealers, such as Johnson and Donnell, who eventually sold ecstasy to end users.

Over the course of the seven-day trial, the Government presented evidence about the overall structure of the conspiracy and more specific evidence describing each appellant's role in it. We summarize the evidence with respect to each appellant below.

Raphael Donnell: To link Donnell to the conspiracy, the Government offered evidence that Donnell was a low-level dealer of ecstasy pills and an enforcer for Seals. Jason Cross testified that he was part of Seals's inner circle and that he distributed ecstasy pills for Seals to lower-level dealers, including Donnell. Cross testified that he sold ecstasy pills to Donnell on seven occasions, usually selling between twenty and seventy pills on each occasion, but at times as many as 175 pills. Andre Brice, another co-conspirator who had pled guilty, similarly testified that he sold Donnell

-4-

pills on several occasions, usually selling between twenty-five and fifty pills each time. The Government also introduced photographs of ecstasy pills recovered during a traffic stop of Donnell. Vu testified that these pills were the same flavors[3] as the pills Vu sold to Seals.

Delesha Hughes, who also had pled guilty, corroborated Brice's testimony about his selling ecstasy to Donnell. Brice testified that Hughes was present during some of his sales to Donnell. Hughes testified that she indeed witnessed multiple occasions when Donnell bought ecstasy pills from Brice and that Donnell usually bought between fifteen and fifty pills each time. Hughes also observed Donnell sell ecstasy pills to others. Additionally, Hughes testified about a handwritten note she received from Donnell after they had been arrested, which the Government introduced into evidence. The note listed various conspirators and described their roles in the operation. With respect to Donnell, the note reads:

> Raphael Donnell: a friend of Dee's [Derrick Seals], dee call him Big Bro at times. supposed to be a killer from Kansas. . . . dee said he would kill for dee cause dee would always help him on lawyers, bills. dee called him a small time hustler cause he didn't sell drugs[;] he stayed in . . . and was into white collar crimes, but was always shooting somebody. dee would take him to club and take him with hi[m] cause a lot of people feared rags [Donnell] and dee felt more protected because of his rep.

The Government's theory was that this section of the note was Donnell's attempt to coach Hughes on what to say in order to exonerate him; that is, if Hughes stated that Donnell did not sell drugs, Donnell could escape the drug-distribution conspiracy charge.

---

[3]Ecstasy pills are produced with different colors and markings, termed "flavors."

The jury also heard recordings of several wiretapped phone calls between Donnell and Seals. Donnell and Seals discussed various firearms, and during one such conversation Donnell remarked that "[i]t is too serious" for them to be "out here naked." The recordings also captured Seals describing a missing firearm and his suspicion that his landlord had taken it. Seals said, "we going to put him to sleep" for taking the firearm, though Donnell suggested that perhaps the "Feds" took it.

Finally, the Government introduced Donnell's 2002 conviction for possession of marijuana under Federal Rule of Evidence 404(b). This conviction resulted from an incident where police found Donnell alone in a house where they also found crack cocaine, PCP, marijuana, and several loaded firearms.

Dempsey Johnson: The Government's evidence against Dempsey Johnson was similar to the evidence against Donnell. Jeffrey Morgan, a low-level dealer who made several crack cocaine and ecstasy sales to Detective Corbin and who had pled guilty, testified that he received those drugs from Johnson. Nicole Wyatt, who had also pled guilty, testified that she too bought crack cocaine from Johnson. Brice testified that he sold ecstasy pills to Johnson on several occasions, usually selling between 50 and 150 pills at a time.

The Government also introduced evidence concerning two prior arrests of Johnson. During an October 20, 1999 arrest, officers found what they described as crack cocaine in Johnson's possession. In 2000, Johnson was arrested for possession of marijuana and cocaine. Officers testified that the 2000 arrest occurred after they saw Johnson drop a package, the contents of which field-tested positive for cocaine. However, Johnson was neither charged nor convicted as a result of either arrest.

Dung Nguyen: Unlike the evidence against Donnell and Johnson, which focused on Derrick Seals's inner circle that was operating in Kansas City, the evidence against Nguyen focused on Vu's description of his ecstasy supply sources

in Dallas, Texas.  Vu, who supplied ecstasy pills to Seals, identified four main sources of these pills, including Nguyen.  Vu testified that he met Nguyen on several occasions and bought between 2,000 and 20,000 ecstasy pills each time.  Amr Elghussain, a friend of Vu's, confirmed that he had introduced Nguyen and Vu and that Nguyen was one of Vu's suppliers.

Boun Rattanavong:  Vu testified that Rattanavong was another one of his Texas ecstasy suppliers.  Vu said he initially purchased between 3,000 and 5,000 ecstasy pills at a time from Rattanavong.  However, these quantities grew over time, to the point where Vu eventually was buying 30,000 pills at a time from Rattanavong.  Vu identified particular flavors of pills recovered from Kansas City as the same flavors he bought from Rattanavong.

The Government also introduced evidence from a traffic stop of Rattanavong. During the stop, an officer discovered $40,400 in bundled currency, disguised as a wrapped gift.  Rattanavong claimed he did not know where the money came from and disclaimed ownership of it.  However, the next day he called the officer who made the stop to report that someone named "Kit" owned the money.  Vu testified that "Kit" was one of Vu's smaller sources of ecstacy pills.

## II.    DISCUSSION

The appellants were charged with conspiracy to distribute ecstasy, cocaine, crack cocaine and PCP in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C).  "To establish that a defendant conspired to distribute drugs . . . the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy."  *United States v. Ojeda-Estrada*, 577 F.3d 871, 875 (8th Cir. 2009) (quoting *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007)), *cert. denied*, No. 09-7906, 2010 WL 58739 (Jan. 11, 2010).

Although there is some overlap among the four appellants' arguments on appeal, we address each individually for the sake of clarity, if not brevity.

### A.  Raphael Donnell

Donnell argues that the district court improperly admitted into evidence (1) the wiretap recordings of his conversations with Seals, (2) the handwritten note describing his involvement in the conspiracy, and (3) his previous conviction for possession of marijuana.  "Evidentiary rulings are reviewed for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence."  *United States v. Espinosa*, 585 F.3d 418, 430 (8th Cir. 2009) (quoting *United States v. Davidson*, 449 F.3d 849, 853 (8th Cir. 2006)).  However, we will not reverse a conviction if an error was harmless.  *Id.*  "The test for harmless error is whether the erroneous evidentiary ruling 'had a substantial influence on the jury's verdict.'"  *United States v. Lupino*, 301 F.3d 642, 645 (8th Cir. 2002) (internal quotation marks omitted) (quoting *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)).

With respect to the wiretap recordings of his conversations with Seals, Donnell argues that they were of little probative value compared to the danger of unfair prejudice and that the entire recordings therefore should have been excluded under Federal Rule of Evidence 403.  Donnell argues that the recorded conversations do not include any mention of drugs and that the firearms discussed had nothing to do with a drug distribution conspiracy, rendering the recordings minimally probative.  The Government argues that the discussions involving firearms supported the conspiracy charge, since the firearms were being used to protect the drug business and were therefore probative of Donnell's involvement in the conspiracy.  While drugs are not discussed during the recordings, "[o]ur court recognizes the known correlation between drug dealing and weapons."  *United States v. White*, 356 F.3d 865, 870 (8th Cir. 2004).  "We have frequently observed that a firearm is a 'tool of the trade' for drug dealers."  *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997).

Donnell argues that the recordings were unfairly prejudicial because they include comments such as Seals's statement about wanting to "put [his landlord] to sleep," encouraging the jury to convict him based on the allegedly violent nature of his activities with Seals rather than on the evidence of his participation in the conspiracy. To determine the admissibility of the recordings, the court must determine whether their probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The conversations between Donnell and Seals bear out the relationship between drugs and firearms and support the Government's claim that Donnell acted as an enforcer for Seals's organization. Donnell said that it was dangerous to be "out here naked" and that perhaps the "Feds" had taken Seals's missing firearm. These statements also were probative of Donnell's awareness that their activities would be of interest to federal law enforcement. On review, we cannot say the district court abused its discretion in admitting the recordings, because the danger of unfair prejudice did not substantially outweigh their probative value on the issue of Donnell's involvement in the conspiracy.

The Government also introduced a handwritten note, which Hughes testified Donnell gave to her while they were awaiting trial. Donnell again argues that this evidence was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. He argues that the "killer from Kansas" language and the statement that Donnell "would kill for" Seals encouraged the jury to convict him based on his allegedly violent nature, rather than on the basis of the evidence of his participation in the conspiracy. The Government argues that the note's detailed descriptions of the co-conspirators' roles showed Donnell's knowledge of and involvement in the conspiracy. At trial, Donnell objected to admitting the note on the ground that there was no evidence that Donnell authored the note, an issue he does not raise on appeal. Donnell did not object based on Rule 403, and he concedes that we may only review the admissibility of the note for plain error. "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights [and] (4) . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

As with the wiretap recordings, the note was probative of Donnell's involvement in the conspiracy and his knowledge of its illegal purpose. The note directly supports the Government's argument that Donnell acted as an enforcer for the conspiracy. In addition to its description of Donnell's role, the note describes the roles of several other co-conspirators in significant detail. The note thus refutes Donnell's argument that he was merely an innocent acquaintance of the active members of the conspiracy. Given the probative value of the note, the district court did not plainly err in finding that any danger of unfair prejudice was insufficient to substantially outweigh the note's probative value.

The Government also introduced evidence of Donnell's 2002 conviction for possession of marijuana. Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." "Evidence is admissible under Rule 404(b) if: '(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.'" *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (quoting *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000)).

Donnell argues that his marijuana possession conviction is inadmissible under the test set out in *Frazier*. His argument focuses on our decision in *United States v. Cook*, 454 F.3d 938 (8th Cir. 2006), where we upheld the exclusion of a marijuana possession conviction because it "was six years remote and it was functionally dissimilar to the charged distribution offense," *id.* at 941 (emphasis omitted). We need not decide whether the district court erred in admitting Donnell's previous

conviction, if we find that any error was harmless. *See United States v. Farish*, 535 F.3d 815, 820 (8th Cir. 2008).

The other evidence against Donnell was sufficiently strong for us to conclude that the conviction, even if improperly admitted, did not have "a substantial influence on the jury's verdict." *Lupino*, 301 F.3d at 645. Multiple witnesses testified that Donnell made multiple purchases of distributable quantities of ecstasy. Hughes testified that she witnessed Donnell sell ecstasy to others. The wiretap recordings and the handwritten note also showed Donnell's role as an enforcer in Seals' organization, buttressing the conclusion that Donnell was an active participant in the conspiracy. *See United States v. Clay*, 579 F.3d 919, 931 (8th Cir. 2009) (finding that acting as enforcer supported a conspiracy charge). Moreover, the district court gave a limiting instruction to the jury—"even if you find that a defendant may have committed similar acts in the past, this is not evidence that he committed such an act in this case"—that further reduced the potential harmful effect of any error. *See United States v. Davis*, 449 F.3d 842, 848 (8th Cir. 2006). Thus, we conclude that any error in admitting the marijuana possession conviction was harmless.

### B.      Dempsey Johnson

In the Government's case against Johnson, the district court admitted under Rule 404(b) evidence of two previous arrests, one in 1999 involving crack cocaine and one in 2000 involving cocaine. Johnson argues that this evidence was introduced to "prove [his] character . . . in order to show action in conformity therewith," rather than for one of Rule 404(b)'s permissible purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Our analysis of Johnson's challenge to the admissibility of the details of his previous arrests proceeds in much the same fashion as our analysis of Donnell's previous conviction. We review for abuse of discretion, but will not reverse if an error was harmless. *Espinosa*, 585 F.3d at 430.

For the same reason we found the admission of Donnell's marijuana possession conviction harmless, we find harmless any error in admitting the circumstances of Johnson's prior arrests: the evidence against Johnson was strong and the district court gave an appropriate limiting instruction, *see Davis*, 449 F.3d at 848. Jeffrey Morgan testified that he obtained the crack cocaine and ecstasy he sold to Detective Corbin from Johnson. When Morgan went to jail for a time, Nicole Wyatt took over Morgan's drug dealing business. Wyatt too testified that the crack cocaine she sold to Detective Corbin came from Johnson. As a result, we find harmless any error in introducing evidence concerning Johnson's prior arrests because they did not have a substantial influence on the jury's verdict.[4]

## C.      Dung Nguyen

Dung Nguyen raises three issues in his appeal, each of which relates to his claim that he was not a part of the overarching, twenty-eight member conspiracy alleged in the indictment. First, he argues that because he was not a member of the overall conspiracy, the indictment improperly joined the charges against the other defendants with the charge against him. Similarly, he next argues that the district court erred in denying his motion for a new trial on the ground that the evidence showed multiple conspiracies rather than a single conspiracy and that this created a variance from the indictment. *See United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000) ("[A] variance in the evidence affects the defendant's right to adequate notice, that is, the Sixth Amendment right to be informed of the nature and cause of the accusation." (internal citation and quotation marks omitted)). Finally, he argues

---

[4]Johnson also objects to the admission of this evidence on the basis that he was only arrested, not charged or convicted, as a result of each incident. However, Rule 404(b) is not limited to prior convictions, and the circumstances of a prior arrest may be admissible under the rule as well. *See United States v. Buckley*, 525 F.3d 629, 635 (8th Cir. 2008). Because we find that any error was harmless, we need not decide whether the arrests were admissible.

that the district court erred in denying his motion for judgment of acquittal based on the sufficiency of the evidence of his participation in the charged conspiracy.

"We review the claim of misjoinder de novo . . . ." *United States v. Jenkins-Watts*, 574 F.3d 950, 967 (8th Cir. 2009). Although his brief is not clear on this point, Nguyen appears to argue both that he was improperly joined with the twenty-seven other defendants in a single indictment and that the separate distribution charges against some defendants were improperly joined with the conspiracy charge against him. With respect to the joinder of multiple defendants, under Federal Rule of Criminal Procedure 8(b), a single indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The indictment charged all twenty-eight defendants with participating in a conspiracy to distribute ecstasy and other drugs, beginning with Rattanavong and Nguyen, through Vu and then Seals, and on to the lower-level dealers such as Donnell and Johnson. "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." *United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989) (quoting *United States v. Adkins*, 842 F.2d 210, 211 (8th Cir. 1988)). Thus, the various defendants, all of whom were alleged to be members of the same overarching conspiracy, were properly joined.

Likewise, while Nguyen was not charged in any of the separate distribution counts, "[i]t is not necessary that all defendants be charged in each count." *United States v. Liveoak*, 377 F.3d 859, 864 (8th Cir. 2004). Rather, the separate charges were for specific acts of distribution in the series of transactions leading from Seals to the eventual end user of the drug; therefore, joinder was proper under Rule 8(b). In any event, the joinder of other charges was irrelevant at the time of trial, since the particular defendants charged in those counts had already pled guilty. When trial began, all that remained was the conspiracy count. Thus, the joinder of the other counts could not have prejudiced Nguyen at trial. *See United States v. Jenkins-Watts*, 574 F.3d 950, 967 (8th Cir. 2009) ("Reversal is required only if the appellant

demonstrates that misjoinder resulted in actual prejudice, i.e., the misjoinder ha[d] 'a substantial and injurious effect or influence in determining the verdict.'" (quoting *Liveoak*, 377 F.3d at 865)).

Nguyen next argues that the district court abused its discretion in denying his motion for a new trial. Nguyen claims that while the Government may have proved he was a member of *a* conspiracy to distribute ecstasy, it did not prove he was a member of *the* overarching conspiracy charged in the indictment. That is, Nguyen suggests that the Government at best proved that multiple conspiracies existed, but the Government did not prove that he joined the particular conspiracy alleged in the indictment. In support of this argument, Nguyen observes that Derrick Seals's operation was based in Kansas City, while Nguyen and Vu lived in Dallas, Texas. Nguyen argues this entitles him to a new trial, since proof of a different conspiracy would be an impermissible variance from the indictment.

"We review a district court's denial of a motion for a new trial for an abuse of discretion." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009), *cert. denied*, No. 09-7814, 2010 WL 58709 (Jan. 11, 2010). "In reviewing claims of variances between the indictment and proof at trial, we examine whether a reasonable jury could have determined that the defendant participated in the single conspiracy charged in the indictment." *United States v. Sdoulam*, 398 F.3d 981, 991 (8th Cir. 2005). In doing so, "we view the evidence in the light most favorable to the verdict." *Id.*

In this case, the evidence was sufficient to allow a reasonable jury to find Nguyen guilty of participating in the conspiracy alleged in the indictment.

> A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement. A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of

the transactions. Further, the agreement need not be explicit, but may be tacit, based upon the actions of the defendant.

*United States v. Ramon-Rodriguez*, 492 F.3d 930, 941 (8th Cir. 2007) (quoting *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006)). "[T]he government may prove the agreement wholly by circumstantial evidence or by inference from the actions of the parties." *United States v. Pizano*, 421 F.3d 707, 726 (8th Cir. 2005). We have held that "[t]he evidence is sufficient to support a conspiracy where the drugs were purchased for resale." *United States v. Romero*, 150 F.3d 821, 826 (8th Cir. 1998).

Vu's testimony regarding Nguyen's multiple sales to him of thousands of ecstasy pills is sufficient evidence to support a jury's finding that he knowingly entered into a conspiracy to distribute ecstasy. And there was sufficient evidence to allow a reasonable jury to find that this was the same conspiracy alleged in the indictment. Indeed, the evidence in this case showed a typical "chain conspiracy."

> [I]n the typical drug distribution conspiracy you may find a manufacturer who produces the product; a supplier who buys the contraband from the producer; [and] distributors who buy from the supplier and sell to smaller dealers or users . . . . Whatever the product, the purpose of the conspiracy is to put the commodity into the hands of the ultimate consumer. The success of the group as a whole is dependent upon the ability of each member to fulfill his responsibilities. Thus, . . . the defendants' knowledge of the existence of remote links in the chain may be inferred solely from the nature of the enterprise.

*United States v. Rosnow*, 977 F.2d 399, 406 (8th Cir. 1992). The Government's evidence traced the ecstasy pills step-by-step from Nguyen to their eventual sale in Kansas City.

Nguyen also challenges the denial of his motion for a new trial because the indictment alleged a conspiracy to distribute four different types of drugs, but Nguyen was involved only with ecstasy distribution. However, "a conspiracy with multiple objectives is not the same thing as multiple conspiracies." *United States v.*

*Santisteban*, 501 F.3d 873, 882 (8th Cir. 2007) (quoting *United States v. Radtke*, 415 F.3d 826, 839 (8th Cir. 2005)). There is no requirement that each co-conspirator be involved in each act related to the conspiracy. *See id.* at 881 ("That the conspirators entered the conspiracy at different times and played discrete roles does not compel a finding of multiple conspiracies."). Therefore, the district court did not abuse its discretion in denying Nguyen's motion for a new trial.

Finally, Nguyen argues that the district court erred in denying his motion for judgment of acquittal. "We review the denial of a motion for acquittal *de novo*." *United States v. Thropay*, 394 F.3d 1004, 1005 (8th Cir. 2005).

> We employ a strict standard of review regarding denials of motions for acquittal, viewing the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence. A jury verdict will not lightly be overturned and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir. 2009) (quoting *United States v. Thompson*, 533 F.3d 964, 970 (8th Cir. 2008)). Nguyen argues that there was insufficient evidence of a conspiratorial agreement among the alleged participants to sustain the jury's verdict against him. In doing so, Nguyen argues that "a mere sales agreement between a buyer and seller with respect to contraband does not constitute a conspiracy." *Romero*, 150 F.3d at 826 (quoting *United States v. Jensen*, 141 F.3d 830, 833 (8th Cir. 1998)). "Mere proof of a buyer-seller agreement without any prior or contemporaneous understanding does not support a conspiracy conviction because there is no *common* illegal purpose: 'In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell.'" *Pizano*, 421 F.3d at 719 (quoting *United States v. Prieskorn*, 658 F.2d 631, 634 (8th Cir. 1981)).

However, a reasonable jury can find that a defendant has more than a mere buyer-seller relationship "if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers." *United States v. Parker*, 554 F.3d 230, 235 (2d Cir.), *cert. denied sub nom. Baker v. United States*, 558 U.S. ---, 130 S. Ct. 394 (2009). Thus, "[t]he evidence is sufficient to support a conspiracy where the drugs were purchased for resale." *Romero*, 150 F.3d at 826. Where the evidence shows multiple transactions involving large amounts of drugs, we have held this is sufficient to support a conclusion that the drugs were purchased for resale. *See, e.g.*, *United States v. Becker*, 534 F.3d 952, 957-58 (8th Cir. 2008). Vu's testimony established just that. He testified that on multiple occasions Nguyen sold him between 2,000 and 20,000 ecstasy pills. As a result, the evidence was sufficient for a reasonable jury to conclude that these pills were intended for resale, and that therefore Nguyen had more than a buyer-seller relationship with Vu. The district court did not err in denying Nguyen's motion for judgment of acquittal.

### D.    Boun Rattanavong

Like Nguyen, Rattanavong appeals the district court's denial of his motion for judgment of acquittal. While his brief is not entirely clear, Rattanavong appears to argue that there was insufficient evidence of his participation in an overarching conspiracy, first because he had no knowledge of the lower-level dealers in Seals's operation in Kansas City or an intent to join a conspiracy with them, and second because he had merely a buyer-seller relationship with Vu. As before, our review is de novo, *Thropay*, 394 F.3d at 1005, viewing the evidence in the light most favorable to the verdict, *Espinosa*, 585 F.3d at 423.

The mere fact that Rattanavong was unaware of the more distant members of the chain-conspiracy does not defeat the conspiracy charge. *See Rosnow*, 977 F.2d at 406. Furthermore, the evidence of Rattanavong's repeated sales of resale quantities of ecstasy pills to Vu shows that Rattanavong also had more than a simple buyer-seller relationship with Vu. Vu testified in detail about his numerous transactions with

-17-

Rattanavong and how the sales grew in quantity, eventually reaching 30,000 pills per transaction. From this evidence a reasonable jury could conclude that Rattanavong repeatedly sold distributable quantities of ecstasy and, as a result, that he joined the charged conspiracy. *See Becker*, 534 F.3d at 957-58. Therefore, we affirm the district court's denial of Rattanavong's motion for acquittal.

### E. Pro se briefs

Finally, Donnell and Nguyen filed pro se briefs raising issues not argued in the briefs filed by their attorneys. Donnell's pro se brief challenges the sufficiency of the evidence and argues that his previous conviction for resisting arrest under Mo. Rev. Stat. § 575.150, which the district court used to apply the career offender provision of the advisory Sentencing Guidelines, is not a crime of violence under *Begay v. United States*, 553 U.S. 137 (2008). Nguyen's pro se brief argues that his counsel was ineffective both at trial and sentencing, and that the district court erred under *United States v. Booker*, 543 U.S. 220 (2005), in determining his base offense level under the Guidelines, because the jury did not determine the quantity of ecstasy involved. "[W]e generally do not accept pro se motions or briefs when an appellant is represented by counsel." *United States v. Barker*, 556 F.3d 682, 690 n.3 (8th Cir. 2009) (quoting *United States v. McIntosh*, 492 F.3d 956, 961 n.2 (8th Cir. 2007)). We see no reason to depart from that general rule in this case. As a result, we decline to address these additional arguments.[5]

---

[5]Even if we were to consider the pro se briefs, we would still affirm. *See supra* Section II.A (discussing the strong evidence against Donnell); *United States v. Hudson*, 577 F.3d 883, 886 (8th Cir. 2009), *cert. denied*, No. 09-8183, 2010 WL 251493 (Jan. 25, 2010) (holding that resisting arrest under Mo. Rev. Stat. § 575.150 is a crime of violence); *United States v. Jones*, 586 F.3d 573, 576 (8th Cir. 2009) ("[W]e do not address claims of ineffective assistance of counsel on direct appeal because such claims usually involve facts outside of the existing record and are therefore best addressed in postconviction proceedings under 28 U.S.C. § 2255."); *United States v. Cruz-Zuniga*, 571 F.3d 721, 726 (8th Cir. 2009) ("After [*Booker*],

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____

'judicial factfinding is permissible at sentencing so long as the district court understands that the sentencing guidelines are advisory only.'" (quoting *United States v. Brave Thunder*, 445 F.3d 1062, 1065 (8th Cir. 2006))).