# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3244

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Jermaine Darnell Samuels, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 18, 2010
Filed:  July 19, 2010

_____

Before LOKEN, BRIGHT and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Jermaine Samuels guilty on two counts of distribution of cocaine base and one count of possession of more than fifty grams of cocaine base with the intent to distribute. *See* 21 U.S.C. § 841(a)(1). Samuels's convictions stemmed from his two sales of crack cocaine to a confidential informant, as well as evidence recovered from a search of his girlfriend's car and of the home where Samuels lived with his girlfriend. Samuels appeals, arguing that there was insufficient evidence to

support the jury's guilty verdicts and that the district court[1] abused its discretion in admitting evidence of his previous conviction for crack cocaine distribution. For the following reasons, we affirm.

## I.      BACKGROUND

In the summer of 2008, Rodney Jones informed Corporal Daniel Westbay of the Davenport, Iowa Police Department that Samuels was distributing crack cocaine. Jones was working as an informant, after police found crack cocaine, drug paraphernalia, and buy money from previous controlled purchases during a search of his home. Jones agreed to arrange a purchase of crack cocaine from Samuels.

On August 30, 2008, Jones called Samuels's cell phone and asked about buying crack cocaine. Police recorded the call. Jones asked to buy one-half ounce of crack cocaine, but because Samuels's price was too high, Jones and Samuels settled on one-quarter ounce, sold in two "eight balls." Samuels and Jones agreed to meet in the parking lot of a local grocery store. Davenport police set up surveillance around the parking lot and concealed an audio recording device on Jones. Consistent with department protocol, officers searched Jones before taking him to the parking lot and gave him pre-recorded money with which to buy the cocaine.

While Jones waited in the parking lot, Samuels arrived, driving a maroon Dodge Intrepid. Jones got in the car and exchanged the money for the crack cocaine. Samuels seemed suspicious, however, asking Jones where his car was. Jones told Samuels that Jones's girlfriend had dropped him off and was inside the grocery store, so Samuels drove Jones to the front of the store. Jones waited just inside the store for Samuels to leave before returning to Corporal Westbay with the crack cocaine.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa

On October 11, 2008, Jones called Samuels to arrange another purchase of crack cocaine. The police again recorded the call. Jones asked to buy more eight balls, but Samuels said he had only $200 worth of individually packaged rocks of crack cocaine. Samuels told Jones to meet him in the parking lot of the restaurant where Samuels worked. Police again set up surveillance, searched Jones before the buy, and gave him buy money. This time police fitted Jones with both video and audio recording devices.

Samuels met Jones in the restaurant parking lot, and they both got in Samuels's Intrepid. Jones bought the $200 worth of crack cocaine rocks and noticed that Samuels had additional crack cocaine with him. The video recording device captured an image of Samuels's face during the transaction. Jones left the car and returned with the crack cocaine to where Corporal Westbay was waiting. Samuels left the parking lot a short time later, and officers in unmarked cars followed him.

The officers decided to stop Samuels but requested that an officer in a marked patrol car make the stop. As soon as the officer turned on his patrol car's lights and siren, Samuels drove off at a high rate of speed. The chasing officers were unable to follow him. Samuels immediately called his girlfriend, Karen Fulford, on his cell phone, telling her that police had attempted to stop him and that she needed to get rid of the drugs he had hidden in the house. Samuels told Fulford that there was marijuana hidden in a closet and bags of crack cocaine hidden in a kitchen drawer. Fulford gathered the drugs and put them in the trunk of her car. After putting her two children in the car, she drove away.

Corporal Westbay, who by then had driven to the house where Samuels and Fulford lived, watched Fulford hurriedly leave the house. At Corporal Westbay's request, other officers stopped Fulford. Fulford consented to a search of the car's trunk, where police found the 60.42 grams of crack cocaine, 405.8 grams of marijuana, and drug paraphernalia she had removed from the house. Fulford also

consented to a search of the house, where police found $7,020, mostly in $20 bills, in a woman's coat, as well as drug packaging materials and a digital scale.

Fulford was taken to the Davenport police station, where she told officers about Samuels's call. In a recorded phone conversation between Fulford and Samuels that night, Samuels promised to come to the station but did not do so. Fulford was released, and Samuels later tearfully apologized to her and promised to turn himself in. Instead, Samuels continued dealing drugs. On November 15, 2008, Samuels was stopped for speeding in Illinois. The Illinois state trooper who made the stop noticed marijuana in the center console of Samuels's car and arrested him. During a subsequent search of the entire car, the trooper discovered more marijuana, for a total of 132.6 grams. Samuels told the trooper he was trying to "get back into the . . . game" because "he knew he would have to rat some people out if he was ever going to get out from under" the drug charges he expected to face.

A federal grand jury returned an indictment charging Samuels with two counts of distribution of cocaine base and one count of possession of more than fifty grams of cocaine base with intent to distribute. Prior to trial, Samuels filed a motion in limine, seeking to exclude evidence of his 2001 conviction for distribution of cocaine base. That motion was denied.

At trial, Jones testified about the two purchases of crack cocaine he made from Samuels on August 30 and October 11. The Government also played the audio and video recordings of those transactions. Corporal Westbay and other officers testified about their surveillance of the controlled purchases, including the fact that they never lost sight of Jones during the transactions. Fulford testified about the phone call she received from Samuels on October 11. Samuels's cell phone records confirmed his call to Fulford and showed an unusually high volume of cell phone activity in general. The Government also introduced the evidence recovered from Fulford's car and from the search of the house where she and Samuels lived. A fingerprint expert testified

that fingerprints recovered from the drug packaging materials in the home matched Samuels's fingerprints.

Over Samuels's objection, Sergeant Troy McClimon testified about the circumstances of Samuels's 2001 crack cocaine distribution conviction. Sergeant McClimon testified that he found Samuels and another person in a hotel room with crack cocaine, marijuana, and various drug packaging materials. Samuels admitted that some of the crack cocaine in the room was his and that he had made four purchases of crack cocaine from someone named Vegas. Sergeant McClimon also testified that Samuels declined an offer to assist in other investigations.

The jury convicted Samuels on all three counts. As a career offender, Samuels's advisory sentencing guidelines range was 360 months' to life imprisonment on the two distribution convictions. *See* U.S.S.G. § 4B1.1. More importantly, he was subject to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) on the conviction for possession of more than fifty grams of cocaine base with intent to distribute. The court sentenced Samuels to life imprisonment and concurrent sentences of 360 months.

## II.   DISCUSSION

We begin with Samuels's argument that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his convictions. "We review the denial of a motion for acquittal *de novo*." *United States v. Thropay*, 394 F.3d 1004, 1005 (8th Cir. 2005).

> We employ a strict standard of review regarding denials of motions for acquittal, viewing the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence. A jury verdict will not lightly be overturned and we will reverse only if no

reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*United States v. Donnell*, 596 F.3d 913, 924 (8th Cir. 2010) (quoting *United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir. 2009)).

Samuels argues that the testimony of Jones and Fulford should not be believed, because they were hoping that, in return for their testimony, they would not face drug charges themselves. He also points out that Jones was paid for acting as an informant. As an initial matter, the "[c]redibility determinations by a jury are 'virtually unassailable on appeal.'" *United States v. Nguyen*, Nos. 08-3940/09-1026, 2010 WL 2346690, at *5 (8th Cir. June 14, 2010) (quoting *United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008)). "On numerous occasions we have upheld jury verdicts based solely on the testimony of cooperating witnesses." *Vickers*, 528 F.3d at 1120. Samuels has not shown that this is the rare case where "no reasonable person could believe the incriminating testimony." *See United States v. Watson*, 952 F.2d 982, 988 (8th Cir. 1991).

Indeed, the Government presented substantial evidence to corroborate the testimony of Jones and Fulford. Recordings of Jones's phone calls to Samuels and of the transactions in Samuels's car tracked Jones's testimony about those crack cocaine deals. Officers who observed the controlled purchases also confirmed Jones's testimony, testifying that they watched Jones during the entire transactions and that he did not interact with anyone other than Samuels before returning to Corporal Westbay with the crack cocaine he had purchased. Cell phone records confirmed that Samuels called Fulford after the officers' unsuccessful attempt to stop him, and his unusually high volume of calls further suggested his involvement in the drug trade. Fingerprints on drug packaging materials found during the search of the home supported Fulford's claim that the drugs belonged to Samuels. Finally, the Illinois state trooper who stopped Samuel's car testified that Samuels admitted that he was

trying to "get back in the game." The evidence in this case was overwhelming, so we reject Samuels's challenge to the district court's denial of his motion for judgment of acquittal. *See Vickers*, 528 F.3d at 1120.

Samuels also challenges the denial of his motion in limine, which sought to exclude evidence of his 2001 crack cocaine conviction. Samuels argues that Sergeant McClimon's testimony about this incident was inadmissible under Federal Rule of Evidence 404(b). "Evidentiary rulings are reviewed for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence." *Donnell*, 596 F.3d at 919 (quoting *Espinosa*, 585 F.3d at 430). Rule 404(b) provides that evidence of a previous conviction is "not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." "Evidence is admissible under Rule 404(b) if: '(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.'" *Donnell*, 596 F.3d at 921 (quoting *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002)).

"Prior felony drug convictions are relevant to show intent and knowledge in a drug prosecution when a defendant makes a general denial defense, which necessarily places the defendant's state of mind at issue." *United States v. Hawkins*, 548 F.3d 1143, 1147 (8th Cir. 2008), *cert. denied*, 556 U.S. ---, 129 S. Ct. 2757 (2009). Because Samuels made a general denial defense in this case, the evidence of his prior conviction was relevant to a material issue. Additionally, the 2001 offense was similar in kind to the present charges, as both involved the distribution of crack cocaine. While Samuels argues that the 2001 offense is not similar in kind because the events took place in a hotel while the current transactions occurred in a car, this difference alone is not sufficient to render them dissimilar. *See United States v. Stenger*, 605 F.3d 492, 499 (8th Cir. 2010). We have also upheld the admission of

evidence of previous convictions which were more remote in time than the eight years here. *See, e.g.*, *United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir.) (upholding admission of eleven year old conviction), *cert. denied*, 555 U.S. ---, 129 S. Ct. 587 (2008). Samuels does not dispute that the fact of his previous conviction was supported by sufficient evidence. Given the significant probative value of the 2001 conviction with respect to Samuels's knowledge and intent, we cannot say that any potential unfairly prejudicial effect of admitting the previous conviction substantially outweighed its probative value, and the district court did not abuse its discretion in admitting it.

However, the Government did not merely introduce the fact of Samuels's previous conviction. Sergeant McClimon's testimony included details of the incident, which Samuels also argues violated Rule 404(b). In particular, the Government introduced the fact that Samuels refused to assist the police with other investigations and that he admitted making four purchases of crack cocaine from a person named Vegas. We need not decide whether the admission of this additional information violated Rule 404(b), if we conclude than any error in its admission was harmless. *Donnell*, 596 F.3d at 919. "The test for harmless error is whether the erroneous evidentiary ruling 'had a substantial influence on the jury's verdict.'" *Id.* (quoting *United States v. Lupino*, 301 F.3d 642, 645 (8th Cir. 2002)). As previously discussed, the Government's evidence in this case was overwhelming. As a result, we conclude that even if the details of the 2001 incident were erroneously admitted, those details did not have "a substantial influence on the jury's verdict." *Id.* Therefore, any error in admitting the circumstances surrounding Samuels's 2001 conviction was harmless.

## III.  CONCLUSION

For the foregoing reasons, we affirm Samuels's conviction.[2]


LOKEN, Circuit Judge, concurs in the judgment.

_____

[2]After oral argument, Samuels filed a motion asking the court to reopen the appeal and allow him to submit briefing on an issue that was raised before and rejected by the district court, namely the constitutionality of his life sentence under the Eighth Amendment.  Samuels did not raise this issue in his opening brief on appeal, and we deny the motion to reopen.  *See United States v. Anderson*, 570 F.3d 1025, 1031 n.3 (8th Cir. 2009).