# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3663

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United |
| v. | *   States District Court for the |
| | *   Southern District of Iowa. |
| Ambrose Rayshawn Spires, also | * |
| known as Ambrose Spries, | * |
| | * |
| Appellant. | * |

_____

Submitted: September 21, 2010
Filed:  January 12, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury found Ambrose Rayshawn Spires, also known as Ambrose Spries, guilty of possession with intent to distribute 50 or more grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and conspiracy to distribute 50 or more grams of crack, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  The jury found Spires not guilty of possession of a firearm in furtherance of the above drug trafficking crimes, 18 U.S.C. § 924(c), and possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Based on Spires's two prior felony drug offenses,

the district court[1] sentenced Spires to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Spires appeals his conviction, arguing that the district court erred in admitting certain evidence and in incorrectly instructing the jury. Spires also appeals his sentence, arguing that his life sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment and that the district court erred in denying his motion to continue the sentencing in light of pending legislation concerning the disparity between crack and powder cocaine offenses. We affirm.

## I.    BACKGROUND

In early November 2008, officers of the Davenport Police Department stopped Andromeda Williams while she was attempting to sell crack. Williams agreed to cooperate as a confidential informant and to participate in a controlled buy of crack cocaine from her supplier, defendant Spires. On November 13, 2008, police outfitted Williams with an audio-video recording device and she called Spires to purchase crack. During the call, Spires told Williams that he just left his apartment but that she could meet with Rayshawn "Eazy" Gartley at the apartment and "he'll take care of you." Williams went to Spires's apartment, knocked on the door, and Gartley answered. Williams told Gartley about her conversation with Spires, Gartley called Spires to verify the deal, and then Gartley gave Williams six rocks of crack for $100.

Several hours later, officers executed a search warrant on Spires's apartment. In the apartment, officers found Spires, alone, along with (1) 189 grams of crack worth approximately $36,900; (2) sandwich bags; (3) two digital scales with suspected crack residue on them; (4) four razor blades with suspected crack residue on them; (5) $633 inside a duffel bag and $236 on Spires's person; (6) a jacket containing Spires's driver's license, his car keys, and a key to the apartment; (7) five cellular phones,

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

including the phone Williams called to set up the controlled buy; and (8) two loaded handguns.[2] In Spires's car, officers found a Western Union receipt showing that Spires sent $700 from Davenport to Aaron Taylor in Chicago, Illinois, on the day of the search. Based on this evidence, Spires was arrested and subsequently charged with drug trafficking and firearms offenses. A three-day jury trial commenced in federal district court on July 13, 2009.

At trial, numerous witnesses testified about the details of Spires's large-scale crack distribution operation in Davenport. Williams, Gloria Barnum, William Morgan, and Laverne Greer all testified that between the summer and fall of 2008, they repeatedly sold crack for Spires in exchange for cash and/or crack for their own use. Barnum testified that on one occasion when she picked up crack from Spires's apartment, she witnessed Spires in possession of a "whole bunch" of powder cocaine that he was cooking on the stove to make crack. When Spires was finished cooking the crack, Barnum witnessed him cut the drug into pieces with a razor, put it on a scale, and wrap the finished product in sandwich bags. Williams similarly testified that she visited Spires in a hotel room and witnessed him placing "a lot of crack" in sandwich bags.

Emmiet Webb, who possessed a key to Spires's apartment, testified that in 2008 he met Spires and Aaron Taylor in the Davenport area. Webb explained that he agreed to sell crack with Spires and that Taylor and Spires were also associates in the drug trade. He testified that Spires traveled to Chicago every two or three days to obtain at least four ounces of crack from his source, Eugene "Manky" Clay, to sell in the Davenport area. Webb explained that when Spires was in Chicago, Spires would leave Taylor his leftover crack to sell to clients on his behalf. Williams similarly

---

[2]The jury found Spires not guilty of firearms offenses associated with these handguns.

testified that Spires would leave her, Taylor, Gartley, Greer, or Barnum his cellular phone and leftover crack to sell to customers in his stead.

Sergeant Smull of the Davenport Police Department testified regarding the significance of the items found in Spires's apartment. Specifically, he testified that, based upon the large quantity of crack in Spires's apartment, the drugs were "clearly [for] distribution." He also explained that the presence of multiple cellular phones, digital scales, sandwich bags, and razor blades was indicative of crack distribution.

Finally, Detective Proehl of the Davenport Police Department testified that he used contact lists in cellular phones seized during the investigation of Spires and his associates to attribute phone numbers to Spires, Taylor, Webb, Barnum, Greer, Morgan, Williams, and Clay. Over Spires's objection, the district court admitted into evidence the call records of three phones seized from Spires's apartment–two of which Detective Proehl attributed to Spires, and one of which he attributed to Taylor. Detective Proehl testified that he analyzed the call records by tabulating the number of calls made between the phone numbers attributed to Spires and Taylor, and the phone numbers attributed to their associates. He then created charts summarizing his tabulations that were, over Spires's objection, also admitted into evidence.

The jury found Spires guilty of possession with intent to distribute and conspiracy to distribute 50 or more grams of crack, but, as earlier indicated, found Spires not guilty of two firearms offenses. The district court then sentenced Spires to a mandatory term of life imprisonment. Spires appeals.

## II. DISCUSSION

### A. Phone Record Summary Charts

On appeal, Spires argues that the district court erroneously admitted Detective Proehl's summary charts into evidence because the charts incorporated Proehl's speculative opinion as to who made and received certain calls. Spires focuses on Detective Proehl's testimony that Proehl had no way of knowing who actually made and received specific calls on the phones. This is especially true, Spires avers, because there was testimony that Spires and his associates often traded phones. We review the district court's decision to admit the summary charts into evidence for abuse of discretion, and we will not reverse if the error is harmless. United States v. Hyles, 479 F.3d 958, 968 (8th Cir. 2007).

Under Federal Rule of Evidence 1006, "[t]he contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." "Summary evidence is properly admitted when (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." United States v. Boesen, 541 F.3d 838, 848 (8th Cir. 2008) (quotation omitted). Also, summaries may include assumptions and conclusions so long as they are "based upon evidence in the record." United States v. Lewis, 759 F.2d 1316, 1329 n.6 (8th Cir. 1985). The government argues that Detective Proehl's summary charts meet the above criteria and were properly admitted into evidence.

We need not decide whether the district court erred when it admitted the summary charts into evidence "if we conclude that any error in [their] admission was harmless." United States v. Samuels, 611 F.3d 914, 919 (8th Cir. 2010). An erroneous evidentiary ruling is harmless if it did not have a "substantial influence on

the jury's verdict." Id. (quotation omitted). As discussed above, the government produced evidence at trial that Spires was found alone in his apartment along with a large quantity of crack cocaine, cash, drug trafficking paraphernalia, and multiple cellular phones, including the phone Williams called to set up a controlled crack purchase. Buttressing this evidence was the detailed and substantially consistent testimony of Spires's ex-associates regarding the intricacies of Spires's crack distribution operation. Simply put, the government's evidence of Spires's guilt on the drug trafficking charges was overwhelming and any error related to the admission of Detective Proehl's summary charts was harmless. See id. (holding that any error in the admission of contested evidence was harmless where evidence of defendant's guilt was "overwhelming").

## B. Jury Instructions

Next, Spires argues that the district court erred when it rejected his proposed jury instructions regarding cooperating witness testimony and the definitions of "crack cocaine" and "reasonable doubt." We review a district court's jury instructions for abuse of discretion and "affirm if, taken as a whole, [the instructions] fairly and adequately instruct the jurors on the applicable law." United States v. Haas, 623 F.3d 1214, 1219 (8th Cir. 2010). Notably, "[a] defendant is not . . . entitled to a particularly worded instruction." United States v. Beale, 620 F.3d 856, 866 (8th Cir. 2010).

The district court used instructions based on Eighth Circuit Model Jury Instruction 4.05A to advise the jury regarding cooperating witness testimony. In relevant part, the district court's instruction advised jurors to "give the testimony of [cooperating] witnesses such weight as you think it deserves." Spires argues that the district court abused its discretion by denying his request to instruct the jury to consider the testimony of cooperating witnesses with "caution and great care." In United States v. Worthing, 434 F.3d 1046, 1050 (8th Cir. 2006), we held that such a

"cautionary tail" instruction is not necessary where cooperating witness testimony is corroborated by other evidence presented in the case, including the testimony of other cooperating witnesses. In the present case, cooperating witness testimony was corroborated by other cooperating witness testimony as well as the evidence found in Spires's apartment. Therefore, the district court did not abuse its discretion when it refused Spires's request to attach a "cautionary tail" to the instructions pertaining to cooperating witness testimony.

Next, Spires challenges the district court's use of Eighth Circuit Model Jury Instruction 3.11 to instruct the jury regarding the definition of "reasonable doubt." Instruction 3.11 provides,

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Spires challenges Instruction 3.11's use of the phrases "hesitate to act," "beyond all possible doubt," and "possibility of innocence." We have repeatedly upheld the use of Instruction 3.11 against the same or similar challenges. See United States v. McCraney, 612 F.3d 1057, 1063 (8th Cir. 2010) (upholding "hesitate to act" language); United States v. Cruz-Zuniga, 571 F.3d 721, 726 (8th Cir. 2009) (upholding "possibility of innocence" language); United States v. Delpit, 94 F.3d 1134, 1148 (8th Cir. 1996) (upholding instruction substantially similar to Instruction 3.11 and explaining that "it is possible to have doubts that are not reasonable"). We continue to uphold this instruction and find that the district court did not abuse its discretion when it used Instruction 3.11 to advise the jury regarding "reasonable doubt."

Finally, Spires asserts that the district court abused its discretion when it merely instructed the jury that "[t]he terms 'crack cocaine' and 'a mixture or substance containing a detectable amount of cocaine base' refer to the same substance." Specifically, Spires argues that the court should have instructed the jury, in relevant part, that "[c]rack cocaine is the street name for a form of cocaine base that is usually prepared by processing cocaine hydrochloride and sodium bicarbonate (baking soda) and that usually appears in a lumpy, rocklike form." In United States v. Saddler, 538 F.3d 879, 892 (8th Cir. 2008), we held that an instruction identical to the one used by the district court in the present case "was clear and followed our circuit's precedent that 'cocaine base' and 'crack cocaine' are synonymous." Therefore, we hold that the district court did not abuse its discretion when it rejected Spires's proposed "crack cocaine" instruction and instead advised the jury using the instruction endorsed in Saddler.

## C. Eighth Amendment: Cruel and Unusual Punishment

Spires also asserts that the imposition of a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A) based on his two prior felony drug convictions constitutes cruel and unusual punishment in violation of the Eighth Amendment. We review de novo Eighth Amendment challenges to sentences. United States v. Scott, 610 F.3d 1009, 1017 (8th Cir. 2010). As we recently explained in Scott, "[w]e have repeatedly affirmed the constitutionality of life sentences under 21 U.S.C. § 841(b)(1)(A)." Id. at 1018 (collecting cases). Moreover, Spires's case is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. (quotation omitted). Indeed, Spires was found alone in an apartment with 189 grams of crack cocaine, witness testimony suggested that substantially more crack was involved over the course of the conspiracy, and Spires has a significant criminal history that includes six prior drug

convictions. Accordingly, we find that Spires's mandatory life sentence does not violate the Eighth Amendment.[3]

### D. Denial of Spires's Motion to Continue Sentencing

Finally, Spires asserts that the district court erred when it denied his motion to continue sentencing until Congress acted on pending legislation that would reduce the sentencing disparity between crack and powder cocaine offenses. We review the denial of a motion for continuance for an abuse of discretion, and we will reverse only if the moving party was prejudiced by the denial. United States v. Vesey, 330 F.3d 1070, 1072 (8th Cir. 2003). Even assuming the district court erred when it denied Spires's motion for a continuance, Spires cannot show prejudice. Although Congress did in fact pass the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010) after Spires's sentencing, the Act is not retroactive and Spires is thus subject to the penalties in place at the time he committed the crimes at issue in this case. United States v. Brewer, 624 F.3d 900, 909 n.7 (8th Cir. 2010).

---

[3]Pending before us is Spires's motion to submit supplemental briefing in light of the Supreme Court's decision in Graham v. Florida, 130 S. Ct. 2011, 2034 (2010), where the Court held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Spires also filed a letter citing Graham pursuant to Federal Rule of Appellate Procedure 28(j). We grant Spires's motion to submit supplemental briefing, but we find his argument under Graham without merit. Spires asserts that Graham has "broadened the analysis of life sentences in non-homicide cases from what was done in prior cases." However, as we explained in Scott, 610 F.3d 1009, "Graham was limited to defendants sentenced to life in prison without parole for crimes committed as juveniles. The Court in Graham did not call into question the constitutionality of using prior convictions, juvenile or otherwise, to enhance the sentence of a convicted adult." Id. at 1018.

## III.  CONCLUSION

For the foregoing reasons, we affirm Spires's convictions and sentence.

_____