In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2236

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID LEWISBEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-cr-354 — **Ronald A. Guzmán**, *Judge.*

ARGUED NOVEMBER 13, 2015 — DECIDED DECEMBER 9, 2016

Before POSNER, RIPPLE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* David Lewisbey was a Chicago-based gunrunner who used a fake Indiana I.D. to buy guns at Indiana gun shows and bring them back to Illinois to sell. He came to the attention of law enforcement when he bragged about his gunrunning exploits on Facebook. Federal agents set up a sting, and Lewisbey was arrested and charged with multiple counts of unlawfully transporting and dealing firearms. A jury convicted him on all counts.

Lewisbey now argues that his attorney was operating under a conflict of interest in violation of his Sixth Amendment right to conflict-free counsel. He also challenges the admission of incriminating text-message and Facebook evidence at trial. Finally, he claims that the testimony of the government's cell-phone location expert did not satisfy the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We reject these arguments and affirm.

## I. Background

David "Big Dave" Lewisbey conducted a thriving interstate gunrunning business from his home in Chicago. He purchased guns at Indiana gun shows with a fake Indiana I.D. and then sold them in Illinois. Federal authorities learned of these activities when Lewisbey boasted about them on his Facebook page; an undercover operation was commenced. After Lewisbey sold a total of 43 guns to a confidential informant in five separate controlled purchases, law enforcement moved in and arrested him. He was charged with one count of unlawful dealing in firearms without a license, 18 U.S.C. § 922(a)(1)(A); two counts of illegally transporting firearms across state lines, *id.* §§ 922(a)(3), 924(a)(1)(D); and two counts of traveling across state lines with intent to engage in the unlicensed dealing of firearms, *id.* § 924(n).

Lewisbey's defense at trial was that he was a gun collector rather than a gunrunner. The evidence showed otherwise. The prosecution's case included video recordings of Lewisbey's sales to the confidential informant, text messages showing that Lewisbey habitually sold guns to purchasers other than the confidential informant, and Facebook photos depicting Lewisbey with lots of guns and large sums of

money. Michael Hall, a business contact of Lewisbey's who occasionally acted as his go-between, testified to the details of some transactions. Another witness testified about selling guns to Lewisbey in a McDonald's parking lot in Indiana. Multiple witnesses testified that they knew Lewisbey from Indiana gun shows and knew that he used a fake Indiana I.D. to illegally purchase guns. Finally, FBI Special Agent Joseph Raschke testified, based on his analysis of Lewisbey's phone records, that calls were made from Lewisbey's phones at times and locations consistent with the illegal gun transactions described by other witnesses. A jury returned a verdict of guilty on all counts, and the judge sentenced Lewisbey to 200 months in prison.

Lewisbey was represented in the district court by Attorney Beau Brindley. At the time Brindley was himself facing a criminal contempt proceeding in the Central District of Illinois. When questioned by the judge about the potential conflict of interest, Lewisbey expressly waived any conflict and consented to Brindley's continuation as his counsel. Following the entry of judgment, and soon after this appeal was filed, the government sought a limited remand to address a different conflict of interest stemming from a new federal criminal investigation targeting Brindley. We remanded the case so the district judge could determine whether a conflict of interest existed and obtain a waiver if necessary. Brindley promptly withdrew and another attorney took over Lewisbey's appeal. With a new attorney in place, the judge canceled the conflict hearing and the appeal resumed.

**II. Discussion**

Lewisbey raises two arguments on appeal. First, he contends that Brindley's troubles with law enforcement created an unconstitutional conflict of interest in violation of his Sixth Amendment right to conflict-free counsel. Second, he challenges the admission of his text messages, Facebook posts, and the testimony of Special Agent Raschke, the government's cell-phone location expert.

**A.  Sixth Amendment Right to Conflict-Free Counsel**

Because the Sixth Amendment protects the right to counsel "whose undivided loyalties lie with the client," a defendant whose trial attorney was "burdened by a conflict of interest" may be entitled to a new trial. *United States v. Barnes*, 909 F.2d 1059, 1065 (7th Cir. 1990) (quotation marks omitted) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). Conflicts of interest in this context usually arise in cases involving joint representation, but a conflict may also arise "when a client's interest conflicts with that of his attorney." *United States v. Ellison*, 798 F.2d 1102, 1106–07 (7th Cir. 1986).

Lewisbey argues that Brindley's interests conflicted with his own because Brindley was the subject of not one but two criminal investigations, giving him an incentive to curry favor with the government. To establish a violation of the Sixth Amendment right to conflict-free counsel, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. The mere possibility of a conflict is "insufficient to impugn a criminal conviction." *Id.* at 350.

Because Lewisbey affirmatively waived any conflict arising from Brindley's contempt proceeding, *see United States v.*

*Lowry*, 971 F.2d 55, 61 (7th Cir. 1992), his Sixth Amendment claim can only relate to the *second* criminal investigation against Brindley. But that investigation came to light *after* Lewisbey was convicted and sentenced and his case had already moved to this court. When Brindley learned that he was the subject of this second investigation, he immediately withdrew; a new, conflict-free attorney thereafter assumed responsibility for the appeal. Brindley's withdrawal cured the potential conflict, removing any possible Sixth Amendment concern.

## B. Evidentiary Rulings

### 1. *Text Messages and Facebook Posts*

Over Lewisbey's objection the judge allowed the government to introduce certain inculpatory text messages from Lewisbey's phones and posts from his Facebook page. We review evidentiary rulings deferentially, for abuse of discretion only. *United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1537 (2015). "[W]e will defer to the district court unless no reasonable person could adopt its view. Even then, reversal only follows if admission of the evidence affected the defendant's substantial rights." *Id.* (citation and quotation marks omitted).

Lewisbey argues that the Facebook posts and the text messages taken from two phones—a Samsung and an iPhone—should have been excluded on both hearsay and authentication grounds. *See* FED. R. EVID. 801, 901. He also argues that the prejudicial impact of this evidence substantially outweighs its limited probative value and thus the evidence should have been excluded under Rule 403 of the Federal Rules of Evidence.

The hearsay objection is a nonstarter. The text messages Lewisbey *sent* are his own statements and as such are excluded from the definition of hearsay by Rule 801(d)(2)(A). The messages he *received* were admitted not for the truth of the matter asserted but instead to provide context for Lewisbey's own messages *See* FED. R. EVID. 801(c)(2); *United States v. Robinzine*, 80 F.3d 246, 252 (7th Cir. 1996) (Statements offered not to prove "the truth of the matter asserted" but for another legitimate purpose do "not even fit the definition of hearsay."). And Lewisbey admitted that the Facebook posts were his, so like his "sent" text messages, the posts qualify as nonhearsay admissions under Rule 801(d)(2).

The authentication objection fares no better. To authenticate the text messages, the government needed only to "produce evidence sufficient to support a finding" that the messages were actually sent and received by Lewisbey. FED. R. EVID. 901(a). The government clearly did so. The iPhone was confiscated from Lewisbey at the time of his arrest, and in a recorded phone call from the jail, he told his mother that the police took his phone. The Samsung device was recovered from his bedroom at his parents' home, a room that both parents identified as belonging exclusively to him. The "Properties" section of the iPhone described the phone as "Big Dave's," and the contacts directory included information for Lewisbey's mother listed under the heading "Mom," and also the name and number of his former attorney. Both phones listed contact information for the Texas Home Depot stores where Lewisbey used to work. And the confidential informant arranged gun sales with Lewisbey on the Samsung phone. That's more than enough to establish that the two phones were indeed Lewisbey's. *See* FED. R.

EVID. 901(b)(4) ("The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," can establish that "the item is what the proponent claims it is.").

Lewisbey's admission that the Facebook posts were his is enough for authentication, but if more were needed, the Facebook page lists Lewisbey's nickname, his date of birth, and his place of residence (Houston) where he lived prior to Illinois. The email addresses associated with the Facebook account correspond to both the email linked with Lewisbey's iPhone and his former email address at the University of Kansas. The Facebook page contains more than 100 photos of Lewisbey—including a profile picture—and many of the Facebook photos match photos also found on Lewisbey's iPhone. The Facebook application on Lewisbey's iPhone was linked to this Facebook account. And messages on the account discuss Lewisbey's trips to gun shows in Fort Wayne and Indianapolis on dates when gun shows actually occurred at these locations.

Finally, Lewisbey argues that the text messages and Facebook posts should have been excluded under Rule 403 because they were merely cumulative. This argument is frivolous. The text messages and Facebook posts were corroborative, not cumulative. Recall that Lewisbey's defense at trial was that he was just a gun collector. The text messages and Facebook posts were admitted to rebut this defense by corroborating the witnesses who testified about Lewisbey's gunrunning activities. The evidence was neither needlessly cumulative nor unfairly prejudicial and was properly admitted.

**2.** *Cell-Phone Expert Testimony*

Finally, Lewisbey challenges the judge's decision to allow Special Agent Raschke to testify about Lewisbey's phone records. Agent Raschke explained that Lewisbey's phone records showed calls made at places and times that corresponded to the testimony of the other prosecution witnesses. Lewisbey claims that this testimony did not meet the requirements of expert testimony under Rule 702 of the Federal Rules of Evidence, which requires that

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the familiar framework established in *Daubert*, the district judge consults a nonexhaustive list of factors to determine whether the requirements of Rule 702 are met; these include: (1) whether the expert's technique or theory is testable or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error in applying the technique or theory; (4) whether standards and controls exist and were maintained; and (5) whether the technique or theory is generally accepted in the scientific community. 509 U.S. at 593–94. The court's gatekeeping function applies

to all expert testimony and not just scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). On appeal we ask first whether the judge applied the proper framework. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015). If the judge did so, then we review the decision to admit the expert's testimony for abuse of discretion. *Id.*

The record reflects that the judge conducted a thorough *Daubert* analysis of Agent Raschke's proposed testimony and soundly exercised his discretion to admit it. Using call records and cell towers to determine the general location of a phone at specific times is a well-accepted, reliable methodology. *See, e.g.,* Rick Ayers, Sam Brothers & Wayne Jansen, Nat'l Inst. of Standards & Tech., *Guidelines on Mobile Device Forensics*, § 6.3 at 54 (2014), http://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-101r1.pdf ("Call detail records can also be used with cell site tower information obtained from the service provider to translate cell identifiers into geographic locations for the cells involved and identify the general locale from which calls were placed."); *United States v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013) ("[T]he use of cell phone location records to determine the general location of a cell phone has been widely accepted by numerous federal courts."). With 350 hours of training in the systems used by the relevant network service providers, Agent Raschke had ample expertise in this methodology. And the judge also appropriately recognized the limits of this technique by barring the agent from couching his testimony in terms that would suggest that he could pinpoint the exact location of Lewisbey's phones. We find no abuse of discretion.

We note in closing that no evidentiary error requires reversal unless it affected the defendant's substantial rights; this in turn requires that "the average juror would have found the prosecution's case significantly less persuasive absent the erroneous evidentiary ruling." *United States v. Trudeau*, 812 F.3d 578, 590 (7th Cir. 2016). The record contains prodigious evidence of Lewisbey's guilt. We're confident that none of the claimed evidentiary errors—if indeed they were errors—had a significant effect on the jury's verdict.

AFFIRMED.