NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2017
Decided December 28, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1200

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11-cr-00640 |
| ALSHAWNTUS BECK, *Defendant-Appellant*. | Robert M. Dow, Jr., *Judge*. |

**O R D E R**

Alshawntus Beck pleaded guilty to possessing a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), and the district court sentenced him to 96 months' imprisonment. Beck now appeals, arguing for the first time that his plea was involuntary because, in his view, the district court did not ensure that he knowingly waived a potential conflict of interest with one of his lawyers. Because Beck has not shown that the district court erred in accepting his waiver or guilty plea, we affirm.

Agents with the Drug Enforcement Administration learned about Beck's drug trafficking during an investigation of Arturo Flores, a wholesaler of heroin and cocaine. This year-long investigation involved wiretaps, surveillance, and two seizures of heroin

from Flores's courier. The agents recorded numerous telephone conversations during which Beck used coded language to arrange purchases of heroin from Flores. Four of the conversations occurred mere hours after Beck was sentenced to 74 months' imprisonment for his part in an unrelated mortgage fraud scheme. The sentencing judge in the fraud case had allowed Beck to wait several months to voluntarily surrender to prison, but before that could happen federal agents arrested Beck, Flores, and several of their associates on drug-trafficking charges.

In September 2011, a grand jury charged Beck with conspiracy to distribute heroin, using a cell phone to further that conspiracy, and three substantive counts of possessing at least 100 grams of heroin with intent to distribute. After two and a half years of pretrial litigation, Beck pleaded guilty to one count of possessing heroin with intent to distribute; in exchange for his plea, the government agreed to dismiss the remaining counts, abandon some of its forfeiture allegations, and withdraw an information that would have enhanced the statutory penalty range based on a prior controlled-substance offense.

Attorneys Andrea Gambino and Sheldon Sorosky jointly represented Beck at the change-of-plea hearing. At the outset of that hearing Gambino told the court that she and Beck had discussed a potential conflict of interest arising from the fact that Gambino was herself under federal criminal investigation at the time. This disclosure triggered the following colloquy among Gambino, Beck, the district judge, and the assistant United States attorney:

> GAMBINO:    . . . I informed Mr. Beck of the potential conflict of interest because the government is investigating another one of my clients and has told me that I'm a subject of that investigation. So I have explained that to him and the fact that that means you could look at it as a potential conflict in the event that he believes that I'm serving the government instead of him, and having told him that, he is willing to waive the conflict and proceed.

> JUDGE:    Okay. Mr. Beck, let me just ask you, sir, have you had a chance to ask Ms. Gambino all the questions you wanted to ask her about that potential conflict?

> BECK:    Yes.

JUDGE:        And so you're aware of the situation with the U.S.
              Attorney's Office?

BECK:         Yes.

JUDGE:        And you're aware that you have a right to what's called
              conflict-free representation? Do you understand that?

BECK:         Yes.
JUDGE:        And that means that you need to be intelligently advised of
              the circumstances, and you need to decide whether you
              want to proceed with Ms. Gambino as your lawyer. And is
              that your choice, sir?

BECK:         Yes.
JUDGE:        Okay.
AUSA:         And, your Honor, for the record, I would also like to point
              out that we also have—that Mr. Beck's counsel is also
              Mr. Sorosky, who has been his counsel from the beginning,
              who has no potential conflict.

JUDGE:        Right. And you're aware then, Mr. Beck, that Mr. Sorosky is
              not in the same circumstance as Ms. Gambino. He is not
              being investigated at all or none of his clients are being
              investigated in connection with the investigation of
              Ms. Gambino's client? Do you understand that, sir?

BECK:         Yes.

After complying with all of the requirements of Rule 11, the district judge then accepted Beck's guilty plea.

Gambino and Sorosky also represented Beck during lengthy sentencing proceedings, with Gambino taking the lead. After sustaining several of Beck's objections to the presentence report, the district judge arrived at a guidelines range of 121 to 151 months' imprisonment and imposed a 96-month sentence, to be served consecutively to Beck's 74-month sentence for mortgage fraud. (Beck had served more than half of the latter sentence when he was sentenced in this case.)

Beck's argument on appeal is difficult to follow, but we understand him to assert that the district court's colloquy about Gambino's potential conflict was so grossly inadequate that it made his purported waiver of the conflict unknowing and thus ineffective. It follows, he says, that his guilty plea also was entered unknowingly. He asks us to vacate his conviction so he can withdraw his plea.

The lynchpin of Beck's appeal is his insistence that prejudice must be presumed because the district judge failed to "adequately address" the potential conflict of interest before accepting Beck's waiver. But as we recently reiterated in *United States v. Lewisby*, a defendant who alleges for the first time on appeal that he was deprived of his right to conflict-free counsel must show that "an actual conflict of interest adversely affected his lawyer's performance." 843 F.3d 653, 657 (7th Cir. 2016) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).

There is nothing to show how Beck could have suffered prejudice from any deficiencies in the district court's colloquy. The record belies any concern that Gambino "pulled her punches" in an effort to curry favor with the government: thanks in part to her zealous advocacy Beck received a 96-month sentence instead of a sentence within a range of 210 to 262 months, as the government had originally requested. The judge even described the sentencing hearings as "extraordinary," both for their length (lasting more than six hours total) and for the number of letters and witnesses Gambino presented in mitigation. It's absurd to think that Beck would have risked a substantially longer sentence and taken his (rather bleak) chances at trial if only the district court had spent marginally more time warning him about a potential conflict of interest that, as far as Beck has shown, never materialized.

It is also unclear why Beck thinks that the district court's efforts to address the potential conflict were inadequate. He says that the colloquy about Gambino's potential conflict of interest was "facially deficient" in light of *United States v. Hubbard*, 22 F.3d 1410, 1418–19 (7th Cir. 1994). But this court *upheld* Hubbard's waiver of a potential conflict of interest, stressing that a defendant's choice of representation must be respected so long as "the defendant understands something of the consequences of a conflict." *Hubbard*, 22 F.3d at 1418. Here Beck confirmed that he knew about his right to conflict-free counsel, that he had had a chance to ask Gambino questions about the potential conflict, and that he still wanted Gambino to represent him.

As Beck accurately asserts, the district court did not expressly inform him of the "specific, possible risks" of maintaining Gambino as his advocate. But Gambino herself explained the risk on the record. She succinctly described the nature of the conflict when she stated that Beck might fear that she was "serving the government instead of him." This captures the hypothetical outcomes that Beck now says he failed to appreciate: that Gambino "might make a deal with the government" or "provide less than zealous representation in an effort to curry favor or protect herself from prosecution." Beck does not say why there would be anything problematic about the only explanation of the conflict being provided (in open court) "by the very attorney who was potentially compromised."

Moreover, Beck has not made any record about the substance of his communications with Gambino, Sorosky, or both, outside of court, even though the nature of those conversations surely informs whether he suffered prejudice. The record reflects that he had at least one conversation about the conflict with Gambino. Also, Beck's argument that the district court was required to put on the record whether Beck had ever spoken to Sorosky about the conflict has no merit. Nothing in *Hubbard* or any other relevant case mandates a verbal confirmation of the defendant's understanding of the conflict. Beck cites no law that would *require* that a defendant consult a second attorney about the conflict, let alone tell the district court about it on the record. There is no constitutional or statutory right even to have two lawyers, except when requested by a defendant in a capital case. *See* 18 U.S.C. § 3005; *Rodriguez v. Montgomery*, 594 F.3d 548, 551 (7th Cir. 2010) (recognizing that "even in federal capital prosecutions the entitlement to a second lawyer is statutory"). If needed, Beck had the good fortune of having a second lawyer available to him to consult before or during the hearing.

Beck's current contention that he did not understand the meaning of conflict of interest or a conflict-free attorney is contradicted by his statement at the plea hearing that he did understand, and the statement in his plea agreement that his plea was "entirely voluntary." At the hearing Beck was not yet under oath when he confirmed his understanding and affirmatively chose to proceed with Gambino as his lawyer. Just because those statements would not technically constitute perjury if his current position is credited is no reason to ignore them altogether. This court does not look favorably on arguments for withdrawing a guilty plea that conflict with statements made at the time the plea was entered. *See, e.g.*, *United States v. Walker*, 447 F.3d 999, 1004–05 (7th Cir. 2006).

Finally, if Beck wants to argue that either or both of his retained attorneys rendered constitutionally ineffective assistance by not adequately advising him about the conflict, the argument is best left for collateral review. *See United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014).

AFFIRMED.