# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1128

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Allen Lamm, also known as Mike Malone

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: November 18, 2020
Filed: July 29, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Kevin Lamm distributed, received, produced, and possessed child pornography using two separate Facebook accounts: one under his name, and the other under the fictitious name Mike Malone. The Government tried to authenticate

evidence from Facebook using certified records, but the district court[1] required additional circumstantial evidence tying Lamm to the Malone account before ultimately admitting the evidence. Lamm appeals the district court's admission of that evidence, as well as the denial of his request to question witnesses at trial. We affirm.

I.

A Homeland Security Special Agent was investigating Jason Jorgenson and his Facebook account for suspected distribution of child pornography. Jorgenson often communicated with two other Facebook accounts, one using the name Kevin Lamm and one using Mike Malone. The agent received certified records from Facebook, which included copies of messages between the three accounts.

Several conversations piqued the agent's suspicions. On January 9, 2017, Jorgenson received a private message from the Lamm account requesting "pics." Jorgenson replied asking for an email, and Lamm gave him a Gmail account containing his real first and last name. That email address matched the email Lamm used when he re-registered as a sex-offender in South Dakota in March 2017.[2] The same Gmail account was used to distribute two images of child pornography in January 2017.

On January 12, Lamm messaged Jorgenson: "Did you message me from another profile?" Jorgenson replied, "Jessica Smith. Yes. Safer that way." The next day, the Malone account sent an image containing child pornography to Jorgenson's Jessica Smith account. Then in February, Jorgenson sent a message to Lamm telling him to watch the video he had sent to the Malone account. Jorgenson

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

[2]Lamm also said his Gmail account was associated with a Facebook account in his re-registration.

later sent another message to Lamm telling him that he had sent more videos to the Malone account.

Around the same time, Jorgenson told T.B., a 14-year-old girl from Indiana, to message the Malone account. T.B. asked the Malone account user what he looked like. The user responded with pictures of Kevin Lamm in a black Nike cap, which were identical to photos posted on both the Malone and Lamm accounts. T.B. also received another picture of Lamm making a peace-sign hand gesture with a distinctive lamp in the background. On January 12, the Malone account asked T.B. to send him pictures and T.B. responded with multiple child pornography images.

The agent suspected that Lamm was behind the Malone account. That was bolstered by subscriber information in the certified records from Facebook. Both accounts were associated with a cell phone number belonging to a Verizon account in Kevin Lamm's name, and the two accounts displayed identical or similar photographs of Lamm making the same hand gestures and wearing the same clothes.

When the agent obtained and executed a search warrant for Lamm's apartment, she saw the lamp in the pictures from the Lamm and Malone accounts. She also found a cell phone that matched the number associated with the Lamm and Malone accounts. On the phone, there were several screenshots of the messages between the Malone account and T.B., and more images of Lamm. There were more screenshots of website memberships using the same Gmail account Lamm gave to Jorgenson. There were also other applications on that phone registered with an email address containing Mike Malone's name.

Agents also found memory cards with photographs of Lamm and child pornography in Lamm's apartment. One of the pictures was the photograph that the Malone account sent to Jessica Smith, as well as the same images exchanged between the Malone account and T.B., and screenshots of messages between the Malone account and T.B. The memory cards also had evidence linking Lamm to the Malone account, including images of Lamm that had been posted on the Malone

account, more screenshots of the messages between the Malone account and T.B., and screenshots of messages between Jorgenson and the Malone account referencing T.B. One screenshot included a conversation between Jorgenson and T.B., with Jorgenson instructing T.B. to contact the Malone account.

Lamm was indicted for one count of distribution of child pornography, 18 U.S.C. § 2252A(a)(2)(A), one count of production of child pornography, 18 U.S.C. § 2251(a), and one count of possession of child pornography 18 U.S.C. § 2252A(a)(5)(B).

Before trial, Lamm asked the district court if he would be allowed to question witnesses at trial. The district court responded, "So generally under the Federal rules, you are either represented by an attorney or you represent yourself. What you're asking about is something that's called a hybrid representation. Generally in Federal Court that's not allowed." After further discussion about proceeding *pro se*, Lamm agreed to keep his attorney.

The district court held a pretrial evidentiary hearing on the Government's motion *in limine* to admit evidence from the Kevin Lamm and Mike Malone Facebook accounts.[3] The Government wanted to introduce records from Facebook that showed Kevin Lamm operated both accounts. The Government argued that the records were sufficiently self-authenticated under Federal Rule of Evidence 902(11) because Facebook certified them. Lamm objected. The district court found certification from Facebook was not enough, and that the Government had to provide further authentication under Rule 901(a) by offering extrinsic evidence to tie them both to Lamm.

At trial, the Government offered that evidence. It introduced images, the memory cards, information from additional websites containing identical subscriber

---

[3]The Government sought to submit the evidence to the jury as original evidence under Fed. R. Evid. 1001(d). That requires that the evidence first be authenticated under Fed. R. Evid. 901 or 902.

information, and identified matching clothing and household items depicted in the images posted on both accounts. After the district court admitted the Facebook exhibits, a jury convicted Lamm on all counts. Lamm appeals the district court's admission of the exhibits, claiming they were not authenticated and contained inadmissible hearsay. Lamm also appeals the district court's denial of his request for hybrid representation.

## II.

"We review the district court's admission of evidence for abuse of discretion." *United States v. Midkiff*, 614 F.3d 431, 441 (8th Cir. 2010). We "give great deference to the ruling of the trial court." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 685 (8th Cir. 2001).

We first address whether the district court abused its discretion by admitting improperly authenticated exhibits. We then turn to the hearsay objection.

## A.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Sufficient evidence may include the testimony of a witness with knowledge, or "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *See* Fed. R. Evid. 901(b)(1), (b)(4). "The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be." *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010) (citation omitted). Authentication may be established by circumstantial evidence. *Kaplan v. Mayo Clinic*, 653 F.3d 720, 725–26 (8th Cir. 2011). "Once the threshold requirement is met . . . any question as to whether the evidence is authentic is for the jury." *Id.* at 726. To authenticate

evidence, a party must clear only a "low bar." *United States v. Turner*, 934 F.3d 794, 798 (8th Cir. 2019).

"[A]uthentication of social media evidence . . . presents some special challenges because of the great ease with which a social media account may be falsified or a legitimate account may be accessed by an imposter." *United States v. Browne*, 834 F.3d 403, 412 (3d Cir. 2016). Our circuit has not yet considered what is sufficient authentication for evidence from social media accounts. Several other circuits have dealt squarely with the issue and have held that certification from the social media forum is insufficient to establish authenticity under Federal Rule of Evidence 902(11), and more extrinsic evidence is required to establish authenticity under Rule 901(a). *See, e.g.*, *Browne*, 834 F.3d at 405.

In *Browne*, the Third Circuit held that simply providing a certification from Facebook does not self-authenticate the ownership of the records. *Id.* at 410–11. Instead, the Government must provide additional extrinsic evidence—which can be circumstantial—to authenticate Facebook evidence and establish authorship. *Id.* at 412–15. Browne operated a Facebook account under the name of Billy Button, which was used to produce child pornography. *Id.* at 405–06. In an effort to establish Browne as the user of the Button account, the Government produced testimony of witnesses who interacted with the Button account, statements from Browne that he was the user of the Button account, and biographical information displayed on the Button account that identified Browne. *Id.* at 413–15. Browne's personal phone was also linked to the Facebook account. *Id.* at 414. The court found that there was "abundant evidence linking Browne and the testifying victims to the chats conducted through the Button Facebook account," and the records were authenticated. *Id.* at 415.

Similarly, in *United States v. Lewisbey*, 843 F.3d 653 (7th Cir. 2016), the Seventh Circuit found that additional extrinsic evidence was sufficient to establish authenticity of Facebook records. While Lewisbey did not operate a secondary account under a fake name, the court held that details on the account identifying him

-6-

sufficiently established authenticity. *Id.* at 658. Specifically, his Facebook account referenced his nickname, listed his place of residence and prior residence, and was linked to his personal email account. *Id.* The Facebook account also contained over 100 images of Lewisbey, and messages sent by that account matched his travel history. *Id.* Lewisbey admitted the Facebook posts were his. *Id.* The court determined that Lewisbey's admission alone was sufficient to establish authenticity, but even if it were not, the cumulative evidence tying him to the account was overwhelming, so there was sufficient evidence to establish authenticity. *Id.*

Relying on *Browne* and *Lewisbey*, the Seventh Circuit reiterated in *United States v. Barber* that "[t]o authenticate Facebook records and messages, the Government need[s] only to produce evidence sufficient to support a finding that the account belong[s] to [the defendant] and the linked messages were actually sent and received by him." 937 F.3d 965, 970 (7th Cir. 2019) (citation omitted). In that case, Barber operated a secondary account under a different name. *Id.* at 969. The Government sought to authenticate the Facebook evidence by providing testimony from a witness who conversed with Barber on the secondary account, as well as the fact that Barber's personal account and the secondary account shared mutual friends, the secondary account had images of Barber, and the same cell phone number was associated with both of the accounts. *Id.* at 969–70. The court determined that the circumstantial evidence provided was more than sufficient to establish the Facebook evidence's authenticity. *Id.* at 971.

We agree with the Third and Seventh Circuits: the Government may authenticate social media evidence with circumstantial evidence linking the defendant to the social media account. The Government did that here. First, the Government linked the same cell phone number—in Kevin Lamm's name—to both accounts.[4] Second, the same images that appeared on Lamm's Facebook account appeared on the Malone account. *See Lewisbey*, 843 F.3d at 658. Third, Lamm had

---

[4]The Government says that the same email address containing Lamm's first and last name was used on both the Lamm and Malone accounts. We don't think this is supported by the record.

-7-

copies of those images on memory cards in his apartment. Fourth, those same memory cards also contained screenshots of private messages only the Malone account could access. Fifth, other online subscriptions found on Lamm's computer used an email address containing the name Mike Malone. Taken together, this evidence provided a rational basis for the district court to pass the question of authentication to the jury.[5]

## B.

The next question is whether the exhibits were inadmissible hearsay. Hearsay is an out-of-court statement offered as evidence to prove the truth of the matter asserted. *United States v. Lindsey*, 702 F.3d 1092, 1101 (8th Cir. 2013). Hearsay is only admissible if it falls within an established exception. *See* Fed. R. Evid. 802, 803. When out-of-court statements are not offered for their truth, but instead to provide context for certain responses, they are not hearsay. *See United States v. Manning*, 738 F.3d 937, 943–44 (8th Cir. 2014).

Lamm claims that the Facebook messages between him and Jorgenson, the Malone account, and T.B. were all inadmissible hearsay because neither Jorgenson nor T.B. testified. We address them in turn.

### 1. Exhibits 143, 144, 145, and 146

Exhibits 143, 144, 145, and 146 are messages between Jorgenson and Lamm. Lamm says that these were inadmissible hearsay because they were offered to show

---

[5]Lamm argues that his case is distinguishable from the Third and Seventh Circuit cases because he never admitted he operated the Malone account and the Government did not have Jorgenson or T.B. testify about communicating with the Malone account. He says someone else could have posted the images of him on the Malone account and any cell phone number may be used to register an account. We think that, cumulatively, the circumstantial evidence was sufficient to establish authenticity.

that he received images of child pornography. The Government argues the exhibits were offered to provide context for Lamm's responses to Jorgenson.

We agree with the Government. Exhibits 143, 144, 145, and 146 were not offered for their truth. In Exhibit 143, Lamm asked Jorgenson if he had messaged Lamm from another account, and Jorgenson explained he used an account named Jessica Smith. This exhibit was offered to explain why Lamm communicated with another, unknown account. In Exhibit 144, Jorgenson sent a message to Lamm saying, "Look at that first video I sent Mike Malone. So god damn hot. Best video I have ever seen." The message was not offered to prove that the video was "hot" or the "best" video Jorgenson had ever seen, but rather to show that Lamm had access to and was familiar with the Malone account.

Exhibit 145 contains a similar message: Jorgenson telling Lamm that he "[s]ent you some hot videos to Mike." Lamm replied, "Ok." Again, this exhibit showed that Lamm used the Malone account. Finally, Exhibit 146 included a message from Lamm to Jorgenson saying, "Send me those pics via text," to which Jorgenson replied, "Ok. Email?" *Id.* at 42. Lamm replied and provided his personal Gmail account. *Id.* Like the other exhibits, Exhibit 146 was not offered to show that Lamm received the images from Jorgenson, but instead why Lamm provided his email and to associate his personal email address with his Facebook account.

We dealt with similar facts in *Manning*. 738 F.3d at 943–44. There, the defendant participated in a peer-to-peer file-sharing program to distribute and get child pornography. The Government tried to admit evidence of chats between Manning and unknown parties on the program. We held that "[t]he statements of . . . unknown participants in the chat conversations . . . were not offered for their truth, but to provide context for Manning's responses—responses that revealed Manning's identity, his preferences for different types of child pornography, and his desire to exchange child pornography with other people online." *Id.* at 944.

The same is true here. Exhibits 143, 144, 145, and 146 provided context for Lamm's responses and his connection to the Malone account. In line with *Manning*, they were not hearsay.

### 2. *Exhibit 100*

Lamm next argues that Exhibit 100 is inadmissible hearsay because T.B. did not testify. The exhibit has hundreds of messages between the Malone account and T.B., including the exchange of several pictures. The Government argues that Exhibit 100 was not offered to show that Lamm (via the Malone account) elicited and received child pornography from T.B., but instead why he revealed his identity to T.B. by sending her pictures of himself.

We do not think these messages were offered for their truth, either. They were offered to "provide context for [his] responses—responses that revealed [his] identity . . . and his desire to exchange child pornography." *Id.* at 944. T.B.'s statements were offered to show why Lamm replied (via the Malone account) with pictures of himself. Because the messages were not hearsay, they were properly admitted.

### 3. *Exhibits 155 and 156*

Lamm last takes issue with the admission of Exhibits 155 and 156, messages between Jorgenson and T.B. Exhibit 156 contains a message from Jorgenson instructing T.B. to "[m]essage my friend," and attaches a screenshot of a conversation with the Malone account. In Exhibit 155, T.B. responds, "Ok." Lamm argues that these exhibits contain inadmissible hearsay because neither Jorgenson nor T.B. testified, and the evidence was offered to prove that T.B. contacted the Malone account. The Government again argues that these exhibits were not offered for their truth, but instead to show why T.B. conversed with the Malone account and to show the "introduction of Mike Malone to [T.B.]."

-10-

This is a closer question. But if the messages between Jorgenson and T.B. were offered for their truth, they would be offered to prove that T.B. *should* message the Malone account, not that she did. They are not hearsay because they were offered to provide context as to why T.B. would be communicating with the Malone account in the first place. And "[s]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth." *United States v. Ralston*, 973 F.3d 896, 913 (8th Cir. 2010); s*ee also United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006) ("Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay."). Because the messages between the Malone account and T.B. are admissible, the messages in Exhibits 155 and 156 are also admissible because they provide context for Exhibit 100.[6]

## III.

We now turn to Lamm's claim that the district court erred in denying his request to question witnesses at trial. We review a district court's denial of hybrid representation for abuse of discretion. *United States v. Summage*, 575 F.3d 864, 876 (8th Cir. 2009). A district court may permit hybrid representation where "a defendant takes over some functions of counsel despite being represented." *Fiorito v. United States*, 821 F.3d 999, 1003–04 (8th Cir. 2016). While a defendant has a constitutional right to be represented by counsel or to represent himself, he "does not have a constitutional right to hybrid representation; it is available at the district court's discretion." *Summage*, 575 F.3d at 876 (citation omitted).

---

[6]Even if Exhibits 155 and 156 are inadmissible hearsay, their admission was harmless error. "An erroneous evidentiary ruling does not [a]ffect a substantial right and is harmless error if, after reviewing the entire record, we determine that the error did not influence or had only a slight influence on the verdict." *United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000). We find no such influence beyond that here. Admitting Exhibits 155 and 156 only provided additional context to paint a fuller picture of why T.B. and the Malone account communicated in the first place. They could not have substantially influenced the jury in light of the overwhelming evidence against Lamm.

Lamm says that the district court was wrong when it said, "What you're asking about is something that's called hybrid representation. Generally in Federal Court that's not allowed." While Lamm acknowledges that allowing hybrid representation is within the district court's discretion, he says the district court got the law wrong by suggesting that hybrid representation is per se not allowed in federal court, and so it committed reversible error.

We disagree. We are not convinced that saying hybrid representation is generally not allowed is a misstatement of law. That may be true in this district court. It is well within the district court's discretion, and if the district court chooses not to allow it, we will not reverse that decision absent some showing of an abuse of discretion.

IV.

The judgment of the district court is affirmed.

_____