# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3041
_____

United States of America

*Plaintiff - Appellee*

v.

Rolando E. Midder

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 22, 2024
Filed: June 4, 2025
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

In June 2022, law enforcement officers in Sarpy County received a tip that Rolando Midder was sex trafficking 16-year-old J.C. Officers met with J.C. and took her to a hospital for a sexual assault exam.[1] After two weeks of investigation, Midder

___

[1]J.C. was "bone thin, frail, [with] apparent bruising, scars on her face . . . [and] scars and marks all over her back and neck as well." The sexual assault exam

-1-

was arrested and charged with one count of sex trafficking a minor and two counts of sexually exploiting a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), (b)(2), and §§ 2251(a) and (e). A jury convicted him on all counts. Midder appeals, arguing that the district court[2] abused its discretion by admitting social media evidence and witness testimony, and that insufficient evidence supported his convictions. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

First, Midder challenges two evidentiary rulings at trial.[3] We review the district court's "[e]videntiary rulings . . . for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence." United States v. Donnell, 596 F.3d 913, 919 (8th Cir. 2010) (quotation omitted).

A.

At the time of his arrest, law enforcement seized Midder's cellphone and later extracted data from it, and then used that data to link the phone to several social media accounts. Midder asserts that the district court erred by admitting the evidence from those accounts because there was insufficient evidence to "link [him] to the

revealed J.C. "had been having sexual intercourse more than just one time," and that "she most likely had some sort of infection" in her vagina.

[2]The Honorable Robert F. Rossiter, Chief Judge, United States District Court for the District of Nebraska.

[3]In his statement of issues, Midder also challenges the scope of testimony given by a nurse who performed J.C.'s sexual assault exam. However, Midder fails to provide any argument on this issue. Thus, Midder has waived appellate review of this claim. See United States v. Aldridge, 561 F.3d 759, 765 (8th Cir. 2009) ("Because the brief does not support this assertion with any argument, this court deems the issue abandoned."). Similarly, Midder makes a passing reference to "erroneous rulings on hearsay evidence" but cites no legal authority and does not develop the argument beyond conclusory statements, so we decline to consider it.

phone[] and its contents." "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." United States v. Lamm, 5 F.4th 942, 946 (8th Cir. 2021) (quoting Fed. R. Evid. 901(a)). "The party authenticating the exhibit need only prove a rational basis for that party's claim that the [evidence] is what it is asserted to be." Id. (quoting Jones v. Nat'l Am. Univ., 608 F.3d 1039, 1045 (8th Cir. 2010)).

"As we have recognized, the 'authentication of social media evidence presents some special challenges because of the great ease with which a social media account may be falsified or a legitimate account may be accessed by an imposter.'" United States v. Perez, 61 F.4th 623, 626 (8th Cir. 2023) (quoting Lamm, 5 F.4th at 947). Nevertheless, while "a certification from a social media platform alone is insufficient to establish authenticity," parties "may authenticate social media evidence with circumstantial evidence that adequately links a particular person to the social media account." Id.

Here, the government presented sufficient evidence connecting Midder to the cellphone and the various social media accounts linked to it. The government introduced evidence that Midder was holding, and using, the cellphone at the time of his arrest. And the data extracted from the phone included autofill information with Midder's name, address, and credit card, as well as contact information for Midder's mother. The government also presented testimony that the phone had stored autofill contact information for "Lisa Lowes," Midder's online persona. The phone was connected to the Facebook account for Lisa Lowes, and the Facebook account was associated with the email address loweslisa3. The Lisa Lowes Facebook user was identified as male, had Midder's birthdate, and had sent a message stating, "I'm not the name an the profile pic isn't me. I'm lala lol." A witness also testified that she communicated with Midder by messaging that account. And several witnesses testified that they knew Midder to go by the name "Lala."

The loweslisa3 email account linked to the Facebook page was also linked to a Skipthegames[4] account. The Skipthegames account had posted advertisements of J.C. and subsequently set J.C. up with "dates."[5] Some of the same photos of J.C. in the Skipthegames posts were also stored on the cellphone. One of the phone numbers listed on the Skipthegames account was a number linked to Midder. And the phone had also used the application TextFree to communicate with sex buyers about ads for J.C. under the username "krislala1313." After Midder's arrest, the account continued to receive messages, but it stopped sending them.

The district court did not abuse its discretion in admitting the contested evidence. See Lamm, 5 F.4th at 948 (connecting a defendant to a social media account with evidence that the suspect account was linked to the defendant's phone number, the account had the same images on it as the defendant's personal account, and the defendant's computer was linked to an email address containing the name used in the suspect account).

B.

Next, Midder challenges the district court's admission of testimony from a woman named Eran Peatrowsky, pursuant to Rule 404(b). "Under Rule 404(b), evidence of prior bad acts is not admissible 'solely to prove the defendant's criminal disposition,' but is admissible to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Sumner, 119 F.3d 658, 660 (8th Cir. 1997) (first quoting United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995); and then quoting Fed. R. Evid. 404(b)). "Evidence is admissible under Rule 404(b) if: '(1) it is relevant to a material issue;

---

[4]Skipthegames is a website where individuals can post advertisements for sex and where people can buy sex.

[5]The jury heard testimony that a "date" is the time that a sex buyer spends with a sex worker.

-4-

(2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.'" Donnell, 596 F.3d at 921 (quoting United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002)). "We reverse the district court's 404(b) ruling 'only when such evidence clearly had no bearing on the case.'" United States v. Campbell, 6 F.4th 764, 772 (8th Cir. 2014) (quoting United States v. Tyerman, 701 F.3d 552, 562 (8th Cir. 2012)).

At trial, Peatrowsky testified that Midder had forced her into prostitution and advertised her on Skipthegames. Midder argues that Peatrowsky's testimony did not describe similar conduct to the charged offense conduct because she testified about being in a romantic relationship with him for five years when they both were adults.

Peatrowsky was an adult, and J.C. a minor, but otherwise, Midder's conduct with them was quite similar. Midder advertised both of them on Skipthegames, communicated with them using the Lisa Lowes Facebook account, and told them when they had a date and where to go. The age difference was irrelevant to why the testimony was offered: to prove Midder knew how Skipthegames operated and what would happen to J.C. after posting her on the website. See United States v. Fortier, 956 F.3d 563, 569 (8th Cir. 2020) (holding evidence that a defendant recorded himself having sex with his adult girlfriend similar in kind to charged conduct of recording sex with two minors because the conduct was the same, and the age difference had "nothing to do" with the government's reason for offering it). For purposes of Rule 404(b), Peatrowsky's testimony was sufficiently "similar in kind" to the conduct charged. See Donnell, 596 F.3d at 921 (quoting Frazier, 280 F.3d at 847).

Nor were Midder's prior acts with Peatrowsky "overly remote in time" from the charged offense conduct. See id. (quoting Frazier, 280 F.3d at 847). Peatrowsky testified that Midder posted her on Skipthegames from early 2018 to approximately February 2022. The investigation involving J.C. began in earnest in June 2022, but the evidence at trial indicated that the sex trafficking activity had started several

months prior. Any gap between the two was not overly remote. See United States v. Geddes, 844 F.3d 983, 990 (8th Cir. 2017) (concluding that evidence of threats and physical abuse four years prior to charged conduct was "not overly remote" under Rule 404(b)).

Midder asserts nevertheless that Peatrowsky's testimony was nothing more than improper propensity evidence. But evidence that Midder previously trafficked Peatrowsky on the same prostitution website that he was accused of using to traffic J.C. was probative of his knowledge of sex trafficking, his intent to sex traffic J.C., and his motivation to make money from it.[6] See Fed. R. Evid. 404(b); Campbell, 6 F.4th at 773 (finding no abuse of discretion in admitting evidence of defendant's sex trafficking of J.R. because it "closely paralleled" charged sex trafficking of M.A., was similar in kind, and was relevant to prove intent and knowledge (quoting United States v. Jarrett, 956 F.2d 864, 867 (8th Cir. 1992))). This was particularly so in light of Midder's explanation to law enforcement that "his girl [J.C.]" stole money from men and brought it back to him and that she just "does what she does."

At the start of Peatrowsky's testimony, the district court also gave the jury a limiting instruction, explaining the "limited purposes" for which the jury could consider the testimony. See United States v. Proto, 91 F.4th 929, 932 (8th Cir. 2024) ("To mitigate the risk that a jury would misuse evidence of prior bad acts, a district court ordinarily gives a limiting instruction to the jury on proper use of the evidence." (citation omitted)). Midder offers no persuasive argument as to why the instruction—which "matched this circuit's model"—was inadequate here. See id.

---

[6]Midder asserts that intent was not relevant "given Midder's defense," and cites to United States v. Sumner, 119 F.3d 658 (8th Cir. 1997). Sumner provides that "[i]ntent is at issue when a defendant relies on a general denial defense," but "is not at issue . . . . [i]f the defendant decides with 'sufficient clarity' to mount a defense that consists 'solely of a denial of the criminal act rather than a denial of the criminal intent.'" Sumner, 119 F.3d at 660 (quoting United States v. Thomas, 58 F.3d 1318, 1321 (8th Cir. 1995)). Midder offers nothing to support a holding that he abandoned the issue of intent at trial, as opposed to generally denying the charges.

(approving a district court's use of a jury instruction "that matched this circuit's model"). The district court did not abuse its discretion by admitting Peatrowsky's testimony under Rule 404(b).

## II.

Finally, Midder argues that there was insufficient evidence to convict him on any of the three counts. "We review the sufficiency of the evidence de novo, 'viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences.'" United States v. Oliver, 90 F.4th 1222, 1224 (8th Cir. 2024) (quoting United States v. Thompson, 11 F.4th 925, 929 (8th Cir. 2021)). Beginning with the sex trafficking a minor charge under 18 U.S.C. § 1591(a)(1), the statute provides:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, . . . [or] maintains . . . by any means a person . . .

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Midder's only argument on this count is that the government failed to offer sufficient evidence of a commercial sex act. He argues that § 1591 requires "proof that such an act was engaged in." But we have held that no such proof is required to convict a defendant under § 1591, because the statute "criminalizes knowingly undertaking activities, such as harboring and transporting a minor . . . knowing that

a person under the age of eighteen *will be caused to* engage in a commercial sex act." United States v. Paul, 885 F.3d 1099, 1103 (8th Cir. 2018) (emphasis added); see also United States v. Jungers, 702 F.3d 1066, 1073 (8th Cir. 2013) ("In many, if not all cases, the commercial sex act is still in the future at the time the purchaser . . . traffics a child in violation of § 1591."). Here, the government's evidence that Midder posted J.C. for dates online, set up dates for J.C., and directed J.C. where to go for dates, was sufficient for a reasonable jury to find that Midder knew J.C. would "be caused to engage in commercial sex." See Paul, 885 F.3d at 1102–03 (holding sufficient evidence for conviction under § 1591 where defendant transported underage girls to a motel, explained how prostitution worked, and set up a sex buy, even though the customer never showed up).

Midder also asserts that there was insufficient evidence to convict him of the sexual exploitation of a minor counts under 18 U.S.C. §§ 2251(a) and (e). The statute provides that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e)." 18 U.S.C. § 2251(a).

At trial, the government introduced videos from Midder's cellphone that depicted two people engaged in oral sex. Midder challenges only whether there was sufficient evidence that he and J.C. were the people depicted in the videos. FBI Special Agent Amber Mann testified that she identified the man in the video as Midder based on his voice, which she recognized after interviewing him and listening to his recorded jail calls. The jury could also compare the voice of the man in the videos with Midder's voice because a recording of Midder's interview with law enforcement was introduced into evidence. Mann then identified the girl in the videos as J.C., after explaining that she had met J.C. in person multiple times, and pointing out characteristics specific to J.C., such as a tattoo, marks on the face, and hair. The videos were also taken and stored on Midder's phone. Viewing this evidence in the light most favorable to the verdict, there was sufficient evidence for a reasonable jury to conclude that the people in the videos were Midder and J.C.

III.

We affirm.

_____